David JORDAN, et al.,
Plaintiffs-Appellees,

v.

CITY OF GREENWOOD, MISSISSIPPI, etc., et al., Defendants-Appellees,

v.

NORTH MISSISSIPPI RURAL LEGAL SERVICES, INC., Movant-Appellant.

No. 86–4001.

United States Court of Appeals, Fifth Circuit.

Feb. 2, 1987.

David G. Hill, Hill & Lewis, Oxford, Miss., for movant-appellant.

Willie J. Perkins, Sr., Greenwood, Miss., pro se.

Billy B. Bowman, Greenwood, Miss., for defendants-appellees.

Before RANDALL, JOHNSON, and JONES, Circuit Judges.

JOHNSON, Circuit Judge:

This class action, initiated in 1977, has succeeded in restructuring the city government of Greenwood, Mississippi. All that remains is to divide the attorneys' fees awarded pursuant to 42 U.S.C. § 1988. The claimants are the attorney primarily responsible for the case, Willie Perkins, and his former employer North Mississippi Rural Legal Services, Inc. (NMRLS). We agree with NMRLS that the district court erred in awarding most of the fees to Perkins.

I. BACKGROUND

On May 6, 1977, four members of the Greenwood Voters League filed a class action against the City of Greenwood, Mississippi. The action, filed on behalf of all black residents of Greenwood, challenged the legality of Greenwood's commission form of government under section 2 of the Voting Rights Act, 42 U.S.C. § 1973. One of the named plaintiffs, Sammie Chestnut, was indigent and therefore eligible for representation by NMRLS, a public legal services corporation funded pursuant to the Legal Services Corporation Act of 1974, 42

U.S.C. § 2996. The remaining named plaintiffs were not eligible for NMRLS representation and thus were represented by private counsel.

At the outset of the litigation, NMRLS attorneys worked together with private counsel.[1] The class complaint, for example, was filed jointly by private counsel and NMRLS attorneys. Similarly, private and public attorneys acting together obtained an order on November 15, 1977, certifying the case as a Rule 23(b)(2) class action. Soon thereafter, however, private counsel reached a strategy impass with the named plaintiffs and withdrew from the case. From that point forward, NMRLS attorneys alone acted on behalf of the class.

After the class had been certified, NMRLS hired Willie Perkins as a full-time salaried staff attorney. Perkins became active in the Greenwood litigation, eventually assuming primary responsibility for the case. In addition to representing the eligible named plaintiff, Sammie Chestnut, Perkins obtained permission from the executive director of NMRLS to represent the ineligible plaintiffs, whose private counsel had earlier withdrawn from the case. Perkins agreed to represent the ineligible plaintiffs on his own time and without any fee arrangement. NMRLS in turn continued to fully finance the litigation and provide necessary facilities and support services.

Perkins, with the assistance of other NMRLS attorneys, was eventually successful in overturning Greenwood's at-large commission form of government.[2] On December 5, 1984, the district court entered a final judgment in favor of plaintiffs and approving a plan submitted by Greenwood that called for election of city commissioners from single-member districts.

All that remained was to determine the reasonable attorneys' fees and costs to be awarded pursuant to 42 U.S.C. § 1988. In its final judgment, the district court directed the parties to negotiate a settlement of the attorneys' fee question. Before any such agreement was reached, however, Perkins resigned from his position with NMRLS and went into private practice.[3] Perkins nevertheless continued working on the case and eventually negotiated a $50,-000 settlement. The district court approved of that settlement in an order entered on October 31, 1985.

In the meantime, NMRLS, acting as counsel for the prevailing class, filed a motion for assessment of attorneys' fees and costs. What ensued is the instant dispute regarding the proper distribution of attorneys' fees. Perkins argues that he personally is entitled to the bulk of the fees, relying on his agreement with past executive directors of NMRLS authorizing him while in the employ of NMRLS to represent the ineligible named plaintiffs on his own time.

The district court agreed. Following a hearing, the district court awarded $36,000 in fees to Perkins. The district court awarded the remaining $14,000 to NMRLS, $10,000 in reimbursement for litigation expenses and $4,000 for time spent on the case by NMRLS attorneys. The district

---

1. Regulations governing the Legal Services Corporation expressly permit such joint efforts between legal service attorneys and private counsel. *See* 45 C.F.R. § 1609.8(c) (1985).

2. The litigation was not without setbacks for the plaintiff class. Following trial of the case in October of 1980, the district court entered judgment in favor of Greenwood finding that plaintiffs had failed to demonstrate that Greenwood's at-large commission form of government was established or maintained for a discriminatory purpose. On appeal, a panel of this Court reversed the judgment of the district court. *Jordan v. City of Greenwood,* 711 F.2d 667 (5th Cir.1983). The panel noted that three months

after the district court announced its decision, section 2 of the Voting Rights Act was amended to outlaw any voting practice that "results in" a denial or abridgement of the right to vote on account of race or color. *Id.* at 668. The panel remanded the case to the district court for reconsideration in light of the amendment to section 2. *Id.* at 670. It was only on remand that plaintiffs eventually prevailed.

3. The parties disagree on the date Perkins left his job with NMRLS. Perkins says that he left on February 13, 1985. NMRLS counters that Perkins did not leave until March 15, 1985. The district court's resolution of this factual dispute in favor of Perkins is not challenged on appeal.

court found that Perkins had agreed to represent the ineligible named plaintiffs on his own time as a public service to the community. The court further found that because of his friendship with one of the ineligible plaintiffs, Perkins expected his services to be uncompensated, except that a fee might ultimately be awarded to the prevailing party pursuant to 42 U.S.C. § 1988. The district court concluded that Perkins' representation of ineligible plaintiffs in this case was properly authorized under Legal Services Corporation Regulations and that Perkins was entitled to receive any fees arising from that representation.

NMRLS appeals contending that as counsel of record for the prevailing class, it should receive any fees awarded for services rendered by its staff attorneys, including Willie Perkins. NMRLS argues that any agreement to the contrary between Perkins and prior NMRLS executive directors is invalid under applicable regulations. We agree.

## II. DISCUSSION

██ Legal services organizations are entitled to attorneys' fee awards under 42 U.S.C. § 1988 to the same extent as private counsel. *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984) (whether plaintiff is represented by private counsel or a nonprofit legal organization does not impact section 1988 fee award); *Watkins v. Mobile Housing Board,* 632 F.2d 565, 567 (5th Cir.1980). In the usual case, such fees are awarded to the orga-

nization itself and not to the salaried staff attorneys involved in the case. *See, e.g., Hamilton v. Daley,* 777 F.2d 1207, 1213 (7th Cir.1985); *Dubose v. Pierce,* 579 F.Supp. 937, 963 (D.Conn.1984), *rev'd on other grounds,* 761 F.2d 913 (2d Cir.1985) (for legal services attorneys personal rewards of clients' victories limited to knowledge that rights of poor people vindicated).

Perkins argues that the instant case requires a different result. According to Perkins, the Legal Services Corporation Act ("Act") prohibited NMRLS from representing the three ineligible named plaintiffs.[4] Because their private attorney had withdrawn from the case, Perkins agreed to represent the ineligible plaintiffs as private counsel and on his own time. Perkins asserts that the nature of the litigation and his friendship with one of the ineligible named plaintiffs persuaded Perkins to work on the case without a fee arrangement. Perkins argues that such "uncompensated outside practice of law" was properly authorized under the Act and regulations promulgated thereunder.

The Act prohibits a full-time legal services attorney from engaging in any compensated or uncompensated outside practice of law, except as authorized in regulations promulgated by the Legal Services Corporation. 42 U.S.C. § 2996f(a)(4).[5] The relevant regulation permits compensated outside practice only if:

(a) The attorney is newly employed and has a professional responsibility to close cases from a previous law practice,

---

4. Perkins correctly points out that the Act only authorizes the representation of eligible clients. 42 U.S.C. § 2996f(a)(1) and (a)(2)(A). These provisions do not, however, prohibit representation and funding of a class action where one named plaintiff is eligible and the others are not. Our review of the Act and regulations reveals no clear answer regarding NMRLS's ability to represent the class in such an instance. We note, however, that the regulations expressly approve of "class action litigation when appropriate to provide effective representation to a client or a group of similarly situated clients; ..." 45 C.F.R. § 1617.4(a) (1985). Nevertheless, the question was not raised during the course of this litigation and is not before this Court.

5. Section 2996f(a)(4) provides that:
    With respect to grants or contracts in connection with the provision of legal assistance to eligible clients under this subchapter, the Corporation shall—
    ....
    (4) insure that attorneys employed full time in legal assistance activities supported in major part by the Corporation refrain from (A) any compensated outside practice of law, and (B) any uncompensated outside practice of law except as authorized in guidelines promulgated by the Corporation;
    ...

and does so as expeditiously as possible; or

(b) The attorney is acting pursuant to an appointment made under a court rule or practice of equal applicability to all attorneys in the jurisdiction, and remits to the recipient all compensation received.

45 C.F.R. § 1604.4 (1985). It is apparent that neither of these circumstances exists in the instant case.[6]

Perkins relies instead on 45 C.F.R. § 1604.5 (1985) which regulates "uncompensated outside practice of law." Regulation 1604.5 permits uncompensated outside practice only if the attorney is acting

(a) Pursuant to an appointment made under a court rule or practice of equal applicability to all attorneys in the jurisdiction; or on behalf of;

(b) A close friend or family member; or

(c) A religious, community, or charitable group.

In particular, Perkins relies on regulation 1604.5(b) which authorizes uncompensated outside practice on behalf of a close friend, in this case one of the ineligible named plaintiffs.

Perkins argues that his representation here was "uncompensated" because the fee award was contingent on success. This argument, however, ignores the fact that contingent fees are a common means of compensation in the legal profession. That the contingent fee was awarded pursuant to statute rather than agreement between attorney and client makes no difference.

Private civil rights practitioners finance much of their practice on fee awards to the prevailing party pursuant to 42 U.S.C. § 1988.

Perkins' argument is also at odds with the express justification for limiting the outside practice of legal services attorneys. The Act and regulations seek to focus the energy and dedication of legal services attorneys on their overriding responsibility to assist eligible clients. 45 C.F.R. § 1604.1 (1985). Outside practice is thus limited to matters either highly unlikely to interfere with that responsibility or necessary to fulfill the attorneys' professional obligations. Regulation 1604.5, for example, permits legal services attorneys to fulfill their ethical obligation to accept court appointments and provide pro bono service. It also permits legal services attorneys to provide minor assistance to close friends and family members. Matters involving compensation, in contrast, whether contingent or not, are by nature far more likely to conflict with legal service attorneys' responsibility to eligible clients.

▬ We conclude, therefore, that regulation 1604.5 does not encompass any fee-generating work, even if the fee is contingent on successfully prosecuting a case. Outside practice is "compensated" within the meaning of the Act and regulations if it reasonably may be expected to result in a fee for legal services.[7] Perkins' representation in the instant class action resulting in a $50,000 award was clearly not "uncompensated" within the meaning of regulation 1604.5.[8] Because it was not, any agree-

---

6. Section 2996f(a)(4) of the Act may be read to absolutely prohibit compensated outside practice. The Legal Services Corporation has not, however, adopted such an interpretation. Instead, the Corporation has determined to permit two narrow categories of compensated outside practice. Because neither category is involved in the instant case, we need not determine whether the Corporation's interpretation of section 2996f(a)(4) is correct.

7. This definition of compensated practice is consistent with the definition of fee-generating practice contained in the regulations. Regulation 1609.2 defines fee-generating practice as

any case or matter which ... reasonably may be expected to result in a fee for legal services from an award to a client, from public funds, or from the opposing party.

45 C.F.R. § 1609.2 (1985). Cases where the possibility exists, if successful, of an award under 42 U.S.C. § 1988 clearly fall within this definition.

8. Perkins mistakenly relies on the clearly erroneous standard of review. The district court's conclusion that Perkins' representation of the ineligible named plaintiffs was "uncompensated outside practice" was a legal conclusion subject to de novo review on appeal. The district court made several factual findings predicate to its

ment between Perkins and former NMRLS directors authorizing him to work on the case as "outside practice" is invalid.

■ Finally, we disagree with any suggestion by Perkins that NMRLS has no proper claim to the fees awarded in this case. NMRLS staff attorneys were counsel of record throughout the course of this litigation. Perkins himself, in his notice of appearance and subsequent filings in the district court, listed his status as a NMRLS attorney. Once the district court entered its Rule 23(b) class certification order, which occurred several months before Perkins was employed, NMRLS's ethical obligations to its eligible client required it to pursue interests which were shared by the class as a whole. Perkins has failed to identify any action that he took on behalf of the ineligible named plaintiffs which was not also required in representing his eligible client, Sammie Chestnut.

## III. CONCLUSION

We conclude, therefore, that the district court erred in awarding most of the attorneys fees to Perkins personally. Perkins is not personally entitled to any fee award for services rendered on behalf of the class while he was employed by NMRLS. The parties agree, however, that Perkins is entitled to personal compensation for services provided on behalf of the class after he left his position with NMRLS. *See also Shadis v. Beal,* 692 F.2d 924 (3d Cir.1982) (Former legal services attorney personally entitled to fee award for services rendered to the class following termination of her employment with legal services.). The case is remanded to the district court to determine the extent, if any, of that compensation.

REVERSED AND REMANDED.

legal conclusion. The court found, for example, that former NMRLS directors had authorized Perkins' representation of the ineligible plaintiffs. The district court also found that one of the ineligible plaintiffs was a personal friend of

Perkins. Only these predicate factual findings, which are not challenged in this appeal, would be subject to the clearly erroneous standard of review.