# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Petitioner,

v.

Guadalupe Guzman Morales, Respondent.

Appellate Case No. 2021-000622

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Lancaster County
Roger E. Henderson Circuit Court Judge,

---

Opinion No. 28154
Heard January 12, 2023 – Filed Click here to enter a date.

---

## REVERSED

---

Attorney General Alan McCrory Wilson and Senior
Assistant Deputy Attorney General William M. Blitch,
both of Columbia, for Petitioner.

Kathrine Haggard Hudgins, of Columbia, for Respondent.

---

**JUSTICE FEW:** Guadalupe Guzman Morales was convicted in 2017 of criminal sexual conduct with a minor in the first and second degree. On appeal, he contends evidence he sexually assaulted the victim's sister should have been excluded under

Rule 404(b) of the South Carolina Rules of Evidence. He argues the trial court erred in admitting the evidence pursuant to the "common scheme or plan" exception, both under the "substantial similarities" test from *State v. Wallace*, 384 S.C. 428, 683 S.E.2d 275 (2009), and under the "logical connection" standard we later articulated in *State v. Perry*, 430 S.C. 24, 842 S.E.2d 654 (2020). The court of appeals agreed as to *Perry* and reversed. We find both the *Wallace* and *Perry* issues are unpreserved for appellate review. We reverse the court of appeals and reinstate Morales' convictions.

## I.      Facts and Procedural History

The State indicted Morales in 2003 for sexually assaulting his stepdaughter between December 1999 and September 2001. The original indictments were destroyed in a 2008 fire in the Lancaster County Courthouse. In 2016, apparently unable to find duplicates of the original indictments, the State re-indicted Morales for criminal sexual conduct with a minor in the first degree, criminal sexual conduct with a minor in the second degree, and assault with intent to commit criminal sexual conduct with a minor in the second degree.

Before trial, the State proffered testimony from the victim's younger sister that Morales also sexually assaulted her. The State argued the similarities between the sexual assaults Morales committed against the two sisters outweighed the dissimilarities, and thus the evidence was admissible under the common scheme or plan exception in Rule 404(b) as analyzed in *Wallace*. *See Wallace*, 384 S.C. at 433, 683 S.E.2d at 278 ("[T]he trial court must analyze the similarities and dissimilarities between the crime charged and the [other crimes] evidence to determine whether there is a close degree of similarity. When the similarities outweigh the dissimilarities, the [other crimes] evidence is admissible under Rule 404(b)." (citation omitted)). The trial court did not immediately rule. At the conclusion of the first day of trial, after the victim testified, the State requested a final ruling on the admissibility of the sister's testimony. The trial court ruled the sister's testimony "will be admissible," stating "the similarities outweigh the dissimilarities and taking their testimony would tend to show a common scheme or plan." On the second day of trial, after three other witnesses testified, the State called the sister to testify. At the conclusion of trial, the jury convicted Morales of all charges and the trial court sentenced him to forty years in prison.

Morales appealed his convictions. In his brief to the court of appeals—filed before our decision in *Perry*—Morales argued two grounds for reversal. First, he argued the trial court erred in admitting the evidence under *Wallace*. Second, he argued *Wallace* was incorrectly decided and *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923), provides the correct standard for analyzing the admissibility of evidence of other crimes under Rule 404(b). Relying on *Wallace*, the court of appeals affirmed in a summary opinion. *State v. Morales*, Op. No. 2020-UP-001 (S.C. Ct. App. filed Jan. 8, 2020). While Morales' petition for a writ of certiorari was pending before this Court, we decided *Perry*, overruling *Wallace*, 430 S.C. at 37, 842 S.E.2d at 661, and returning to the "logical connection" standard from *Lyle*, 430 S.C. at 44, 842 S.E.2d at 664-65. We then granted Morales' petition, dispensed with briefing, reversed the court of appeals, and remanded to the court of appeals "for reconsideration of the substantive and procedural issues in light of this Court's decision in *State v. Perry*." *State v. Morales*, Op. No. 2020-MO-009 (S.C. Sup. Ct. filed Sept. 23, 2020).

On remand, the court of appeals found "the issue is preserved" and reversed Morales' convictions under the "logical connection" standard from *Perry*. *State v. Morales*, 433 S.C. 196, 201 n.4, 205, 857 S.E.2d 383, 385 n.4, 387 (Ct. App. 2021). We granted the State's petition for a writ of certiorari to address issue preservation, and if the issue is preserved, the merits of the court of appeals' decision.

## II.    Analysis

We consider two separate issue preservation questions. First, we consider whether Morales preserved the *Wallace* argument that there was not a sufficiently close degree of similarity between the crimes charged and the sexual assaults against the sister. Second, we consider whether Morales preserved his argument that *Wallace* was incorrectly decided and the State failed to establish a sufficient "logical connection" between the sexual assaults against the sister and the crimes charged such that the evidence could be used for some purpose other than to show Morales' propensity to commit acts of sexual violence against children. *See Perry*, 430 S.C. at 44, 842 S.E.2d at 665 ("The State must show a logical connection between the other crime and the crime charged such that the evidence of other crimes 'reasonably tends to prove a material fact in issue.' The State must also convince the trial court that the probative force of the evidence when used for this legitimate purpose is not substantially outweighed by the danger of unfair prejudice from the inherent

tendency of the evidence to show the defendant's propensity to commit similar crimes." (citations omitted)).

## A.    *State v. Wallace*

As to the first question, though *Wallace* has now been overruled and the "substantial similarities" test is no longer the law, *Wallace* was the law at the time of Morales' trial in 2017. Therefore, if the State failed to demonstrate "the similarities outweigh the dissimilarities" as *Wallace* required, 384 S.C. at 433, 683 S.E.2d at 278, the trial court should have sustained Morales' objection.

We find, however, Morales failed to make a valid objection. *See State v. Sweet*, 374 S.C. 1, 5, 647 S.E.2d 202, 205 (2007) ("To properly preserve an issue for review there must be a contemporaneous objection that is ruled upon by the trial court."). The State raised the issue before trial and asked for a conditional ruling on the admissibility of the sister's testimony. The trial court did not rule at that time. During trial, the State asked for a "final ruling" and the trial court responded, "I'm going to find her testimony will be admissible and I will allow her to testify tomorrow."[1] Before the State called the sister to testify, however, it called three other witnesses. One of the witnesses—child abuse dynamics expert David Kellin— testified about two of the three similarities the State primarily relied on to satisfy *Wallace*: the dynamic of a father figure in the family, and grooming. A second witness—a forensic interviewer—testified to statements the victim made as to the location of the assaults, a third similarity the State primarily relied on to satisfy *Wallace*. A third witness—the former girlfriend of a family member—testified to

---

[1] The State argues that even at this point Morales did not make a sufficient objection because counsel stated only, "So we think that the testimony of [the sister] is -- will be improper bolstering of [the victim's] testimony," and counsel did not reference Rule 404(b) as a basis for objecting. This is a strong argument, as "improper bolstering" is not a Rule 404(b) issue, but one that arises under Rule 608(a), SCRE. *See State v. McKerley*, 397 S.C. 461, 464, 725 S.E.2d 139, 141 (Ct. App. 2012) (explaining that the principles of law prohibiting improper bolstering "are incorporated into Rule 608(a)"). Nevertheless, it is clear from the trial court's response to Morales that it understood the issue as one arising under Rule 404(b). In finding the *Wallace* issue unpreserved, therefore, we rely only on the lack of a contemporaneous objection.

statements the victim made about the location of the assaults and as to who else was in and around the home when the assaults occurred. When the sister actually testified, Morales did not object.

We recently discussed the necessity of a contemporaneous objection in *State v. Jones*, 435 S.C. 138, 866 S.E.2d 558 (2021). We explained that if no evidence is offered between a preliminary ruling and the admission of the evidence ruled upon, then "the decision is final" and there is no need for an additional objection. 435 S.C. at 144, 866 S.E.2d at 561. When additional evidence is offered in the meantime, however, an additional, contemporaneous objection is usually required "because 'the evidence developed during [the interim] may warrant a change in the ruling.'" *Id.* (quoting *State v. Mueller*, 319 S.C. 266, 268, 460 S.E.2d 409, 410 (Ct. App. 1995)). The fact the State asked for what the assistant attorney general called a "final ruling" does not make the ruling "final" for purposes of issue preservation. Here, the ruling was not final because the trial court itself gave no indication of such an intent and there were three intervening witnesses before the sister testified. *Cf. State v. Wiles*, 383 S.C. 151, 157, 679 S.E.2d 172, 175 (2009) (holding a ruling was final despite the admission of other evidence between the ruling and the admission of the evidence ruled upon where, "by his actions, the trial judge clearly indicated that his ruling was a final, rather than preliminary, one because he commented **to the jury** about petitioner's escape before any evidence was admitted"). Each of these witnesses' testimony related to at least one similarity the State argued existed between the assaults against the victim and the sister. It is entirely possible the trial court could have considered the testimony of one or more of these witnesses to "warrant a change in the ruling." When the State eventually did call the sister to testify, however, Morales' failure to object deprived the trial court of the opportunity to consider whether a change in ruling was warranted. Morales' failure to make a contemporaneous objection renders the *Wallace* issue unpreserved.

### B.    *State v. Perry*

Morales' failure to make a contemporaneous objection also renders the *Perry* issue unpreserved. For the same reasons the trial court's ruling was not final as to the *Wallace* issue, the ruling was not final as to the *Perry* issue. Thus, a contemporaneous objection was required to preserve the *Perry* issue.

As to the *Perry* issue, however, we find the issue is unpreserved for an additional reason. At the time of Morales' trial—2017—the *Wallace* "substantial similarities"

test had been in effect for eight years. Thus, the State had little reason to suspect it needed to do anything other than satisfy *Wallace* to have the sister's testimony admitted.[2] The foundation required to satisfy *Wallace* was simply to proffer the evidence and convince the trial court the assaults were sufficiently similar. As we held in *Perry*, however, laying the foundation for a "logical connection" requires more. We explained, "The State must show a logical connection between the other crime and the crime charged such that the evidence of other crimes 'reasonably tends to prove a material fact in issue.'" 430 S.C. at 44, 842 S.E.2d at 665 (quoting *Lyle*, 125 S.C. at 417, 118 S.E. at 807); *see also* 430 S.C. at 30, 842 S.E.2d at 657 (holding the State must convince the trial court "the evidence . . . serves some legitimate purpose that is not prohibited by Rule 404(b)"); 430 S.C. at 41, 842 S.E.2d at 663 ("The common scheme or plan exception demands more. There must be something in the defendant's criminal process that logically connects the 'other crimes' to the crime charged."). Then, the State must convince the trial court "the evidence has sufficient probative force for serving the legitimate purpose that the evidence should be admitted, despite its inherent tendency to serve the improper purpose" of propensity. 430 S.C. at 31, 842 S.E.2d at 657-58; *see also* 430 S.C. at 44, 842 S.E.2d at 665 ("The State must also convince the trial court that the probative force of the evidence when used for this legitimate purpose is not substantially outweighed by the danger of unfair prejudice from the inherent tendency of the evidence to show the defendant's propensity to commit similar crimes.").

To preserve what we call here the *Perry* issue, therefore, it was necessary to alert the trial court that Morales contended *Wallace* was not the proper standard and to put the State on notice Morales contended the State must do more than simply introduce the evidence and argue similarity. Morales gave neither the trial court nor the State

---

[2] Justice Hearn wrote a concurring opinion in 2018 suggesting *Wallace* should be overruled. *See State v. Perez*, 423 S.C. 491, 501-02, 816 S.E.2d 550, 556 (2018) (Hearn, J., concurring) (calling the majority opinion in *Wallace* "a marked departure from earlier case law requiring some connection between crimes beyond mere similarity," and stating, "the Court should . . . overturn . . . *Wallace* . . . [because it] so expanded the admissibility of [other crimes] in sexual offense cases that the exception has swallowed the rule."). Apart from then-Associate Justice Pleicones' dissent in *Wallace*, 384 S.C. at 435-36, 683 S.E.2d at 279 (Pleicones, J., dissenting), however, until Justice Hearn's concurring opinion in *Perez*, this Court said nothing indicating a willingness to reconsider *Wallace*.

any indication he contended *Wallace* was not the proper standard. First, Morales told the trial court during the pre-trial hearing: "the attorney general stated the Rule correctly . . . ," referring to the State's argument the similarities outweigh the dissimilarities. Second, had Morales taken issue with the applicability of *Wallace*, he would have—and should have—challenged the trial court's ruling that "the similarities outweigh the dissimilarities and taking their testimony would tend to show a common scheme or plan" as being based on the wrong standard. Morales now argues the fact he mentioned *Lyle* was sufficient. We disagree. To preserve the *Perry* issue, Morales was required to be clear at trial that he contended *Wallace* set forth the incorrect standard and the correct standard for admissibility under Rule 404(b) was a logical connection.

We are mindful that issue preservation rules should not be applied in a technical manner as if this is some sort of game of "gotcha" elevating form over substance to trap trial lawyers so as to prevent the appeal of a legitimate issue. *See Jones*, 435 S.C. at 145, 866 S.E.2d at 561; *Herron v. Century BMW*, 395 S.C. 461, 470, 719 S.E.2d 640, 644 (2011) ("We are mindful of the need to approach issue preservation rules with a practical eye and not in a rigid, hyper-technical manner."). One primary purpose of our issue preservation rules is to "give the trial court a fair opportunity to rule." *Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 329, 730 S.E.2d 282, 285 (2012) (quoting *Queen's Grant II Horizontal Prop. Regime v. Greenwood Dev. Corp.*, 368 S.C. 342, 373, 628 S.E.2d 902, 919 (Ct. App. 2006)). A trial court's opportunity to rule necessarily includes both parties being aware of the nature of the objection such that they may present their best arguments addressing *that* objection. This then serves another purpose of our rules— "meaningful appellate review." *Id*. (quoting *Queen's Grant II Horizontal Prop. Regime*, 368 S.C. at 373, 628 S.E.2d at 919).

Our ruling here serves each of these purposes. If Morales had argued to the trial court the State was required to establish a logical connection under *Lyle*—rather than merely present similarities and dissimilarities for the court to weigh—the State might have been able to lay a foundation for a logical connection, thus eliminating these appellate issues by "enabl[ing] the lower court to rule properly after . . . consider[ing] all relevant facts, law, and arguments." *Herron*, 395 S.C. at 465, 719 S.E.2d at 642 (quoting *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000)). One potential logical connection could have been the dynamic of a false father figure. At oral argument before this Court, the State argued Morales led both children to believe he was their real father, and he used that belief

to normalize his behavior and convince "his" children they must submit to him and not report what he was doing. We agree it is possible this false father figure dynamic could have been factually developed into a sufficient logical connection. That factual development, however, must have occurred at trial, likely through specific testimony from the two children as to how Morales used his role and how they responded to him as "father" in submitting to the sexual assaults and not reporting the assaults after they occurred. The State also argued there were other possible connections it could have factually developed, such as Morales' unique manner of grooming. Each of these—if factually developed at trial—could have "serve[d] some legitimate purpose beyond propensity" as required under Rule 404(b). *Perry*, 430 S.C. at 40, 842 S.E.2d at 662. The State also pointed out that had it known Morales intended to make a logical connection an issue on appeal, it might have simply chosen not to introduce the sister's testimony.

We find the *Perry* issue unpreserved because Morales did not make a contemporaneous objection. We also find the *Perry* issue unpreserved because he did not raise the "logical connection" standard to the trial court and gave the State no reason to think it needed to factually develop such a connection to support the admission of the sister's testimony. Morales' failure to make his position clear at trial not only deprived the trial court of an opportunity to consider whether there was a logical connection, but it also deprived the State of its opportunity to develop one.

### III.    Conclusion

Because Morales did not properly object to the sister's testimony under *Wallace* or what is now *Perry*, the merits of his argument that the sister's testimony was not admissible are not preserved for appellate review. We reverse the court of appeals and reinstate Morales' convictions and sentence.

**REVERSED.**

**JAMES, J. and Acting Justices Kaye G. Hearn and H. Bruce Williams, concur. KITTREDGE, Acting Chief Justice, concurring in result only.**